39 F.3d 1191
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Elaine S. GOODALL, Plaintiff-Appellant,
v.
THE GATES CORPORATION, Defendant-Appellee.
 No. 93-1281.
 United States Court of Appeals, Tenth Circuit.
 Oct. 25, 1994.
 
 ORDER AND JUDGMENT[1]
 Before BALDOCK, McKAY, and HENRY, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Elaine Goodall appeals from an order and judgment entered in favor of defendant, the Gates Corporation (Gates), following a bench trial. Goodall alleged that Gates, the administrator and named fiduciary of the Gates' Health Care Plan, wrongfully terminated her from the plan. She sought reinstatement under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1132(a)(1)(B). Alternatively, she sought equitable relief, pursuant to 29 U.S.C. 1132(a)(3), on grounds that her severe mental illness should have relieved her of the obligation to pay her premium for continuation coverage within the grace period. The district court held that Goodall was not entitled to reinstatement and her mental illness was not sufficiently severe to excuse her late payment. We exercise jurisdiction under 28 U.S.C. 1291 and affirm.
 
 
 3
 The Gates' Health Care Plan (the plan) is an employee welfare benefit plan within the meaning of section 3(1) of ERISA, 29 U.S.C. 1002(1). The plan provides medical benefits to Gates employees and their eligible dependents. The plan covered Goodall, the spouse of a Gates employee. According to Gates, Goodall became ineligible for regular coverage in December 1990, when she separated from her husband. Gates terminated Goodall's regular coverage, but offered her continuing coverage. In writing, Gates informed Goodall that a monthly payment was due on the second of every month, that no notices of the payment would be sent, and that the continuing coverage would terminate if she failed to make monthly payments. After four months of paying for continuing coverage, Goodall failed to tender her April 2, 1991 payment within the grace period, which expired May 2, 1991. Gates sent Goodall a letter on May 13, 1991, informing her that her coverage had been canceled. On May 30, 1991, Goodall left a check at Gates for her premium. Gates returned the check the following day. The district court denied Goodall's claims for reinstatement and equitable relief.
 
 
 4
 The district court reviewed Gates' interpretation of the plan de novo, because the plan does not give the plan administrator or fiduciary discretionary authority to construe the plan's terms. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). This court reviews the district court's legal determinations de novo. Pratt v. Petroleum Prod. Management, Inc. Employee Sav. Plan & Trust, 920 F.2d 651, 658 (10th Cir.1990). "Where, as here, trial is to the court, the resolution of factual issues and conflicting evidence lies solely within the province of the district court." Ershick v. United Missouri Bank, 948 F.2d 660, 666 (10th Cir.1991). We will not set aside the court's factual findings unless they are clearly erroneous. Id.
 
 
 5
 In the first of three issues on appeal, Goodall challenges the district court's interpretation of the plan. She argues that Gates could not terminate her from the regular plan just because she no longer resided with her husband. She advances five supporting arguments, all of which we reject.
 
 
 6
 Goodall introduced several versions of the plan at trial. The court found as a matter of fact that the plan controlling Goodall's coverage was adopted in April 1989. To be a dependent eligible for coverage under that version of the plan, a "spouse must be the member's legal spouse and share a permanent residence." Appellant's App., doc. 2, at 6. A separate provision governing termination of coverage states that a dependent's coverage will end if the "dependent no longer meets the Plan's definition of a dependent," or "[t]he member and his or her dependent spouse divorce ... [or] separate." Id. at 9. The court found that the plan terms were unambiguous. Based on the parties' stipulation that Goodall had not lived with her husband since December 2, 1990, the plan could not be interpreted to cover Goodall after that date, the court concluded.
 
 
 7
 Goodall claims that the court should have applied language from an earlier version of the plan which terminated the coverage of a dependant spouse upon "divorce or legal separation of a dependant spouse from the Member." Id., doc. 3, at 3-9 (emphasis added). According to Goodall, Gates made only informal and stylistic changes in the April 1990 version of the plan, changes which should not be viewed as modifying the earlier requirement of legal separation. The trial transcript does not support Goodall's argument. Gates' manager of benefits testified that the reference to legal separation was dropped in the April 1990 version so that the termination of coverage provisions would be consistent with the dependent eligibility provisions, which, even in the earlier version of the plan, required the spouse to share a permanent residence with the member. The district court's interpretation gives effect to the plain language of the April 1990 version of the plan and is consistent with the stated reasons for the amendment.
 
 
 8
 We refuse to consider Goodall's argument that the April 1990 version is unenforceable because Gates failed to follow the proper procedures for amending the plan. We cannot determine from the materials submitted on appeal that Goodall raised this issue to the district court. See Farmers Ins. Co v. Hubbard, 869 F.2d 565, 570 (10th Cir.1989) ("This court will generally not address issues that were not considered and ruled upon by the district court."). Goodall did not sufficiently raise the issue by her broad argument at trial that Gates made only informal changes to the plan. See Toledo v. Nobel-Sysco, Inc., 892 F.2d 1481, 1494 n. 7 (10th Cir.1989)(refusing to consider theory of liability on appeal that was not specifically raised to the district court), cert. denied, 495 U.S. 948 (1990).
 
 
 9
 None of Goodall's remaining arguments convince us that the plan should be interpreted to cover Goodall after she ceased living with her husband. We cannot agree that the term "share a permanent residence" is ambiguous. While interpretation of the term could prove troublesome in some circumstances, the term is not ambiguous as applied to the facts at hand because the parties stipulated that Mr. and Mrs. Goodall have not lived together since December 2, 1990. We also reject Goodall's claim that Gates should be estopped from denying coverage after it sent her documents stating that coverage was dropped because of legal separation. It is well settled that estoppel claims are precluded under ERISA. See Peckham v. Gem State Mut., 964 F.2d 1043, 1050-51 (10th Cir.1992). Finally, we do not decide whether plan language requiring spouses to share a permanent residence violates public policy because it infringes on the sanctity of marriage. We cannot determine from the record that Goodall raised this argument to the district court. See Farmers Ins. Co., 869 F.2d at 570.
 
 
 10
 The second issue raised on appeal is that Gates violated the Consolidated Omnibus Reconciliation Act of 1986 (COBRA), 29 U.S.C. 1161-68, by terminating coverage in anticipation of a qualifying event. COBRA requires plans governed by ERISA to provide a qualified plan participant with continuing coverage in the event the participant would lose coverage under the plan upon the occurrence of certain qualifying events. 29 U.S.C. 1161(a). "The divorce or legal separation of the covered employee from the employer's spouse" is a qualifying event. 29 U.S.C. 1163(3). Goodall complains that Gates impermissibly attempted to avoid COBRA's requirement of continuing coverage by terminating spouses before they become legally separated or divorced from the covered employee.
 
 
 11
 The district court was unpersuaded by Goodall's argument that a plan could not legally terminate coverage in anticipation of a qualifying event. It is unnecessary to reach that legal argument on appeal because there is no support for Goodall's factual premise that Gates drafted its plan to avoid COBRA. The evidence shows that even though Gates did not consider Goodall's physical separation from her husband to be a COBRA qualifying event, Gates offered Goodall continuing coverage identical to the coverage that qualified plan participants receive under COBRA. See Appellee's Supp.App., at 147.
 
 
 12
 The final issue raised by Goodall is whether her mental illness should have tolled the grace period for her April 1991 payment. The payment was due April 2, the grace period expired May 2, and Goodall finally tendered her premium on May 30. The district court, citing Sirkin ex rel. Albies v. Phillips Colleges, Inc., 779 F.Supp. 751 (D.N.J.1991), recognized that an insured's mental incapacity could extend the grace period for paying a late premium. The court noted that the law was unsettled as to the level of incapacity required to toll a payment deadline: "The question is whether, considering the remedial goals of ERISA, an insured's disability must render her completely, or merely substantially unable to understand and perform her obligations before tolling applies." Appellant's App., doc. 4, at 8. The court concluded that "[r]egardless of which standard is used, Ms. Goodall failed to carry her burden of establishing a degree of mental incompetence sufficient to toll the time period." Id. at 9. After carefully reviewing the record, we must agree with the district court's conclusion. The evidence, which has been amply summarized by the district court, does not show a mental impairment to a degree sufficient to toll the grace period.
 
 
 13
 Gates has requested attorney's fees and costs on appeal pursuant to 29 U.S.C. 1132(g)(1). Fees are not granted "as a 'matter of course.' " McGee v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1209 (10th Cir.1992) (citation omitted). Fee awards under 1132(g)(1) are discretionary. Id. In exercising that discretion, we consider the following factors:
 
 
 14
 (1) [T]he degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to personally satisfy an award of attorney's fees; (3)whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.
 
 
 15
 Id. at n. 17 (quoting Gordon v. United States Steel Corp., 724 F.2d 106, 109 (10th Cir.1983)). The factors are only guidelines and no single factor is dispositive. Id. Of the factors, only the last weighs in favor of an award to Gates. We deny Gates' request for attorney's fees and costs under 1132(g)(1).
 
 
 16
 The judgment of the United States District Court for the District of Colorado is AFFIRMED. Appellant's Motion to Supplement Appendix is GRANTED. Appellee's request for costs is DENIED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470