Zeda SIMPSON, Plaintiff,

v.

T.D. WILLIAMSON, INC., a corporation, and Jeffery Simpson, Defendants.

No. 02–CV–682–J.

United States District Court, N.D. Oklahoma.

June 4, 2004.

Jay C. Baker, Tulsa, OK, for Plaintiff.

J. Daniel Morgan, Jodi Fowler Jayne, Gable & Gotwals, James R. Gotwals, Mary Lou Gutierrez, James R. Gotwals & Associates, Tulsa, OK, for Defendants.

Jeffery Simpson, Broken Arrow, OK, pro se.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOYNER, United States Magistrate Judge.

This matter came on for non jury trial before the Court on May 10, 2004. Jay C. Baker appeared on behalf of Plaintiff; J. Daniel Morgan appeared on behalf of Defendant T.D. Williamson (hereinafter "TDW"); and, Jeffery Simpson appeared pro se.[1] After considering the testimony

1. As a preliminary matter, the Court directed     counsel to sign the same pretrial order as had

and arguments of counsel and reviewing the exhibits and other evidence introduced at trial, the Court hereby enters the following findings of fact and conclusions of law:

## A. FINDINGS OF FACT

1. Jeffery Simpson, Plaintiff's former husband, was at all times material to the allegations, a full time employee of Defendant TDW.

2. Mr. Simpson enrolled in the family health care insurance coverage for himself and his dependants, which included Plaintiff.

3. Plaintiff and Mr. Simpson separated in early July 2000 and have since lived apart. Divorce proceedings were subsequently filed by Plaintiff in the District Court of Tulsa County, Oklahoma on July 12, 2000 and assigned Case No. FD–2000–2955.

4. On July 10, 2000, the District Court of Tulsa County entered an "Emergency Protective Order" which was directed to Defendant Jeffery Simpson. The Order contained the following provisions:

"Defendant ordered to remain away from the victim [Mrs. Simpson] or victims and the residence of the victim where ever it may be at all times.

Defendant ordered to immediately leave the residence located at 1200 East Dover Street, B.A. [This is the marital residence of the Parties]."

There was no provision regarding health insurance.

5. On July 24, 2000, the District Court of Tulsa County entered a "Continuing Emergency Protective Order" which contained the same prohibition against Mr. Simpson having any contact with Mrs. Simpson and ordered him again to remain away from the family residence.

6. On July 12, 2000, Mrs. Simpson's "Petition For Divorce and Application For Temporary Restraining Order" was filed in the District Court for Tulsa County. In that petition for divorce, Mrs. Simpson states:

"That a temporary order is needed giving Plaintiff possession of the marital residence at 1200 Dover Street, Broken Arrow, Oklahoma and excluding Defendant from the home."

7. On August 30, 2000, an additional Protective Order against Mr. Simpson was issued which contained the same prohibitions as those previously entered.

8. On October 27, 2000, an "Agreed Temporary Order" was entered in the Simpson divorce which awarded Mrs. Simpson the exclusive possession and use of the marital residence and stated:

"Defendant is restrained and prohibited from entering within or upon the residence of the Plaintiff or about any place she may be, as provided in a Protective Order previously issued."

In reference to health insurance, it further provided:

"Each party is restrained and prohibited from withdrawing from, altering, assigning and/or encumbering or otherwise dealing with any ... existing policy of insurance, whether such insurance be health ... and the policy/certificate owner should be required to maintain such insurance during the pendency of this action."

9. On October 17, 2001, Mrs. Simpson sent a letter to TDW demanding that the company not disclose to her "estranged" husband any medical information concerning her, including the Explanation of Benefits form from her health insurance.

pro se Defendant, amended the pretrial order to reflect non-jury trial and also orally amended the pretrial to include the cross claim of Jeffery Simpson.

10. On February 28, 2002, as a result of Plaintiff's letter of October 17, 2001, TDW sent Plaintiff a letter advising her that TDW had become aware that a qualifying event had occurred and as a result, her medical coverage terminated as of January 31, 2002. The letter then advised her of her right to continue coverage under COBRA for 36 months and provided election forms. Plaintiff immediately called Beverly Hudgens, Human Resources representative for TDW and complained that she should not have to make the COBRA election.

11. On March 4, 2002, Jeffery Simpson signed a Service Request with Mutual Assurance Administrators, Inc., changing his coverage from "Employee and Spouse" to "Single." The form was filled out and provided to him by TDW shortly after he was advised by TDW that Plaintiff's coverage was being terminated. Jeffery Simpson simply signed the form.

12. Jeffery Simpson's divorce counsel advised him he was no longer obligated under the temporary order to maintain Plaintiff's health insurance because the coverage had changed and he had not orchestrated the change.

13. On March 8, 2002, Plaintiff through her divorce attorney, Ollie W. Gresham, filed application to add TDW to the divorce action, followed by a corrected application for same filed on April 11, 2002. The applications sought to add TDW so the divorce court could determine Plaintiff's eligibility for continued coverage.

14. On April 25, 2002, Ms. Eliot, counsel for TDW sent a letter to counsel for Plaintiff, which reiterated the company position that a qualifying event had occurred and offered to settle the matter in order to avoid being made a party to the divorce action by allowing one of the parties to submit an election to continue coverage under COBRA. The letter stated that if such an election was not made, coverage would lapse and there was nothing more TDW would be able to do. The letter concluded by requesting the hearing be stricken on the application to add TDW to the divorce action. The letter stated: "If we do not receive Mrs. Simpson's election on or before April 29, 2002, her COBRA eligibility will lapse unless Mr. Simpson elects to have his spouse covered by COBRA on or before that date. Mr. Simpson can notify us of his election. In that event, we will deduct the single coverage monthly premium of $294.43 from Mr. Simpson's paycheck beginning with the next scheduled payroll."

15. Mrs. Simpson called TDW to protest the company's position but submitted the COBRA application form on April 26, 2002. Plaintiff testified she submitted the election because she was afraid she would have no coverage at all if she did not submit the election.

16. On April 29, 2002, Plaintiff's counsel sent Ms. Eliot, TDW's counsel, a letter taking issue with TDW's position that a qualifying event had occurred, attaching a memorandum of law in support of Mrs. Simpson's position.

17. On May 2, 2002, TDW sent Mrs. Simpson a letter which stated that her COBRA rights were being accepted and that her coverage dates would be retroactive to February 1, 2002. It also stated that the monthly premium due was $294.43, that monthly premiums were considered due by the 15th of the month preceding the month of coverage and that if payment was not received in the prescribed time, coverage would be terminated retroactively to the last month paid and could not be reinstated. Plaintiff received no further notice from TDW until she received notice her insurance had been canceled. During this time she testified she assumed Mr. Simpson was paying the premium.

18. On May 3, 2002, Ms. Eliot at TDW sent a letter to counsel for both parties to the divorce advising of receipt of the CO-BRA election and stating Plaintiff would be liable for the premium payments. The letter further states TDW's assumption that the motion hearing on the application to add TDW as a party "will be stricken" based upon the matter being resolved and requests counsel contact TDW if this assumption is not correct.

19. On May 6, 2002, Plaintiff's counsel sent Ms. Eliot a letter advising her the hearing had been continued to May 30, 2002 at 8:45 a.m.

20. On May 7, 2002, TDW sent Plaintiff a medical ID card and claim form.

21. On May 14, 2002, Plaintiff's counsel filed motion to modify seeking modification of the temporary support to add $294.43 for COBRA payments which Plaintiff has become liable to pay and which the motion states she has been paying.

22. On May 28, 2002, Ms. Eliot sent a letter to counsel for Plaintiff confirming a telephone conversation with him that TDW would not be joined as a party and that TDW's appearance on May 30 would not be required.

23. On June 7, 2002, TDW sent an e-mail to Mr. Simpson advising Plaintiff's premiums must be paid by June 10 or coverage would be terminated retroactively to February 1 and could not be reinstated. There is no indication the notice was also sent to Mrs. Simpson.

24. Mr. Simpson forwarded the e-mail to his divorce lawyer who e-mailed him back that Mrs. Simpson's counsel had advised she was paying for it.

25. On June 14, 2002, Plaintiff's counsel forwarded a Financial Declaration to divorce counsel for Mr. Simpson in prepara-

tion for trial on the merits. The Financial Declaration lists COBRA payment in the amount of $295.00 [2] per month as a monthly expense of Plaintiff's.

26. On June 18, 2002, the divorce trial was held.

27. On June 18, 2002, TDW sent Plaintiff a letter advising her insurance had been canceled for nonpayment of premiums. It is undisputed that Plaintiff did not make payments to TDW to continue the coverage. Nor did Mr. Simpson make any payments.

28. On June 20, 2002, Jay Baker wrote a letter to TDW enclosing a memorandum of law with case attached seeking resolution of Plaintiff's continued medical coverage.

29. Also on June 20, 2002, Mr. Gresham, Plaintiff's divorce counsel, filed Plaintiff's Application to Re-open the divorce action to include medical payments, among other issues.

30. On July 1, 2002, Jay Baker sent a memorandum to Mr. Gresham asking Gresham to make sure the divorce judge makes a finding preserving Plaintiff's right to pursue a claim against Mr. Simpson and/or TDW if the judge did not rule on the medical insurance issue.

31. On July 3, 2002, Plaintiff again urged the divorce court to resolve the CO-BRA dispute. The court's response was recorded in a minute order stating that the "matter regarding COBRA is found to be a civil matter and irrelevant to this Court." The position taken by Plaintiff on that day and the fact the motion to add TDW was never withdrawn belies any notion of an agreement that TDW was released from its COBRA obligation by Plaintiff.

2. The exhibit is very difficult to read but it appears the amount listed is $295.00 and this represents the amount of the COBRA premium rounded up to the next whole number.

32. On July 15, 2002, Plaintiff sent a letter to TDW advising that a final divorce had been granted and electing COBRA coverage.

33. On July 22, 2002, TDW responded by advising Plaintiff her COBRA rights had expired for failure to pay premiums under the prior election and could not be reinstated because COBRA does not allow multiple qualifying events.

34. On August 1, 2002, the divorce judge announced his decision.

35. The final Decree of Divorce was entered on September 13, 2002. Plaintiff had lived separately from Jeffery Simpson from the time the Protective Order was entered until the finalization of the divorce.

36. Plaintiff submitted medical expenses at trial in the amount of $7,153.79. Plaintiff also testified she charged a reduced rate for collection work she did for physicians in exchange for medication samples when they were available and that her monthly prescriptions cost $754.61 with an occasional additional $42.19 for Xanax.

37. Plaintiff submitted legal bills at trial in the amount of $16,614.73.

38. Mr. Simpson incurred $3,019.66 in legal expenses for this action while he was represented by counsel.

39. Nida Blumer testified that the COBRA premium of $294.43 lasted through September 9, 2003, at which time it increased to $341.11.

40. Plaintiff acquired alternative insurance through Fortis and paid premiums in the amount of $508.33 a month beginning June 25, 2002.

41. TDW stipulated at trial that it would be financially able to pay any penalty awarded by the Court.

42. Any Finding of Fact which might be properly characterized as a Conclusion of Law shall be considered as such, and vice versa.

## B. CONCLUSIONS OF LAW

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as a civil action arising under the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), 29 U.S.C. § 1161 *et seq.*, which governs TDW's health plan. Venue is proper. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims against Jeffery Simpson. The parties have consented to proceed before the undersigned Magistrate Judge.

2. COBRA was enacted to provide employees who had been covered by employment-related group health care plan with an opportunity to elect continuation of coverage in the event of some "qualifying event." *Hubicki v. Amtrak Nat. Passenger R. Co.*, 808 F.Supp. 192 (E.D.N.Y. 1992).

3. The Court previously entered an Order in connection with TDW's Motion for Summary Judgment in which the Court concluded that the temporary orders entered in the state court divorce action did not constitute a "qualifying event" triggering COBRA notification and that COBRA notification could only be triggered by entry of a Decree of Divorce under Oklahoma law. At trial TDW sought reconsideration of this ruling in its pleadings. The Court stands on its original ruling and the authority on which it is based and incorporates the Order of November 3, 2003 herein by reference in its entirety as to this issue.

4. The COBRA notice that was sent to Plaintiff in this case is invalid because no qualifying event occurred to trigger notice.

5. COBRA notice is compulsory and cannot be waived. *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380 (10th Cir. 1997); *McDowell v. Krawchison*, 125 F.3d 954 (6th Cir.1997); *Mlsna v. Unitel Communications, Inc.*, 41 F.3d 1124 (7th Cir.

**1252**

1994); *Holford v. Exhibit Design Consultants,* 218 F.Supp.2d 901 (W.D.Mich.2002).

■ 6. There was no accord and satisfaction reached between TDW and Plaintiff on any substantive issue. TDW was not joined as a party to the divorce action as a result of the divorce court's indication to the parties' counsel in the divorce action that the motion to add TDW would not be granted and that the court considered the COBRA issue a civil action which should be brought in a separate proceeding. This was also memorialized by minute order in which the state court found the COBRA matter "irrelevant."

7. Plaintiff's COBRA election had no legal force or effect.

8. TDW has never given Plaintiff CO-BRA notice pursuant to 29 U.S.C. § 1166 after a legally recognized "qualifying event," that being the entry of the Decree of Divorce on September 13, 2002. The applicable provision of section 1166(c) mandates notice as follows:

> "For purposes of subsection (a)(4) of this section, any notification shall be made within 14 days ... of the date on which the administrator is notified [of a qualifying event]...."

9. Whether Jeffery Simpson violated the terms of the temporary order by failing to pay for Plaintiff's health insurance premiums when TDW converted Plaintiff to a COBRA policy was a matter which should have been resolved in the state court divorce proceeding. There was no evidence that contempt proceedings were ever initiated against Mr. Simpson for failure to pay the COBRA premiums and Mr. Simpson testified his attorney advised him he was no longer responsible for the payment after the COBRA conversion. Based upon this testimony, the Court cannot conclude that Mr. Simpson's actions were taken in bad faith. Further, the temporary order merged into the final divorce decree and Plaintiff is precluded from recovering any monies alleged to be due pursuant to the temporary order. Okla. Stat. tit 43, § 110 B.

## I. DAMAGES

10. 29 U.S.C. § 1166 provides that "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." Plaintiff is entitled to receive COBRA notice from TDW and to receive 36 months of coverage at her expense should she elect COBRA coverage from the date notice is given. Because Plaintiff was entitled to notice at the time the Divorce Decree was entered for COBRA purposes, September 13, 2002, Plaintiff will only be responsible for the amount her premium would have been as of that date, $294.43, for the first 11 months of her election. Beginning in the twelfth month of the election period and continuing for the balance of the election period, Plaintiff will be responsible for $341.11 a month in premiums for the number of months $341.11 is the premium charged. Should premiums increase before the number of months has been reached for which the premium remained at $341.11, Plaintiff will continue to pay $341.11 and TDW will be responsible for any additional monthly cost.

11. Plaintiff is entitled to recover from TDW her out of pocket medical expenses in the amount of $7,153.79 which includes the insurance premiums paid by Plaintiff in the amount of $3558.31 from 6/25/02 through 1/25/03. No deduction for insurance premiums shall be made. Plaintiff would have had no expense had the CO-BRA notice not been premature and not given until after the Decree of Divorce because Jeffery Simpson would have continued to pay the family premium as directed by the Temporary Order.

12. Plaintiff has failed to provide sufficient proof as to the actual cost of prescriptions for which she has paid and/or the value of prescriptions for which she testified she reduced her charges to physician clients in exchange for free samples.

13. Plaintiff is not entitled to recover damages from Jeffery Simpson for the reasons set forth in paragraph 9.

## II. STATUTORY PENALTY

14. 29 U.S.C. § 1132(1) provides:

"Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section [1166] ... [the Cobra notice] ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure ... and the court may in its discretion order such other relief as it deems proper...."

15. The Court finds there was an argument for TDW to make that a court ordered separation was a "qualifying event" in that the legal issue had not previously been the subject of a definitive ruling in Oklahoma. However, the statutory penalties evidence a clear policy to provide the maximum benefit to participants and beneficiaries and TDW was notified by counsel for Plaintiff and provided with legal authority in support, that TDW's interpretation was disputed. Further, there was no legitimate legal argument that notice could be waived or negotiated away. Therefore, even though the Court does not conclude TDW acted with any malice or bad faith, the Court finds a statutory penalty in the amount of $25 a day should be awarded to Plaintiff from the date the Decree of Divorce was filed, September 13, 2002, until proper notice is given to Plaintiff.

## III. ATTORNEY FEES

16. Plaintiff is entitled to an award of attorney fees from TDW pursuant to 29 U.S.C. § 1132(g)(1), which provides:

"In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

Plaintiff shall submit an application for fees within 20 days from the date of this Order. TDW shall have 15 days thereafter to file response. The Court will determine if a hearing is necessary upon filing of the response.

17. Jeffery Simpson has also requested reimbursement of his attorney fees. However, the Court finds no legal authority under which Mr. Simpson is entitled to recover attorney fees.

18. Jeffery Simpson's cross claim against Defendant TDW is denied as moot.

## IV. CONCLUSION

Based on the forgoing, Plaintiff is entitled to judgment as set forth herein and said judgment is being filed contemporaneously with these Findings of Fact and Conclusions of Law. Plaintiff is entitled to post judgment interest from this date in the statutory amount until paid. Plaintiff is awarded costs of the action upon timely application pursuant to N.D. LR 54.1 against Defendant T.D. Williamson.

IT IS SO ORDERED THIS __ DAY OF JUNE, 2004.