**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ZEDA SIMPSON,

      Plaintiff-Appellee,

v.

T.D. WILLIAMSON INC.,
a corporation,

      Defendant-Cross-Defendant
-Appellant,

                      &amp;

JEFFERY SIMPSON,

      Defendant-
Cross-Claimant.

No. 04-5084

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA.
(D.C. No. 02-CV-682-J)
(321 F. Supp. 2d 1240 & 321 F. Supp. 2d 1247)**

---

Submitted on the briefs:[*]

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Jay C. Baker, Tulsa, Oklahoma, for Plaintiff-Appellee.

J. Daniel Morgan, Gable & Gotwals, Tulsa, Oklahoma, for Defendant-Appellant.

_____

Before **LUCERO**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

_____

**BALDOCK**, Circuit Judge.

_____

The Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. §§ 1161-68 (COBRA), an amendment to ERISA, authorizes a qualified beneficiary of an employer's group health insurance plan to maintain coverage when she might otherwise lose coverage upon the occurrence of a "qualifying event." See id. § 1161(a); Geissal v. Moore Med. Corp., 524 U.S. 74, 76 (1998). A "qualifying event" requires the health plan administrator to notify the beneficiary that she may elect to continue health insurance coverage in return for premium payments. See 29 U.S.C. § 1166(a)(4); Smith v. Rogers Galvanizing Co., 128 F.3d 1380, 1383 (10th Cir. 1997). "[D]ivorce or legal separation of the covered employee from the employee's spouse" constitutes a "qualifying event" under COBRA. See 29 U.S.C. § 1163(3).

The issue in this case is whether an Oklahoma divorce court's interlocutory protective orders requiring a husband, a "covered employee," to stay away from his wife, a "qualified beneficiary," pending their divorce qualified as a "legal separation," thereby triggering COBRA's notice requirement and the wife's

-2-

corresponding obligation to pay premiums in exchange for continued coverage. A magistrate judge twice answered no – once in denying the plan administrator's/ employer's motion for summary judgment and once after a bench trial. Simpson v. T.D. Williamson, Inc., 321 F. Supp. 2d 1240 (N.D. Okla. 2003) (Simpson I); Simpson v. T.D. Williamson, Inc., 321 F. Supp. 2d 1247 (N.D. Okla. 2004) (Simpson II). On appeal, the plan administrator/employer claims otherwise. We have jurisdiction, 28 U.S.C. § 636(c)(3), review this question of statutory interpretation de novo, see Keys Youth Servs., Inc. v. City of Olathe, 248 F.3d 1267, 1274 (10th Cir. 2001), and affirm.

I

The facts are undisputed and ably set out in Simpson II, 321 F. Supp. 2d at 1248-51. In sum: Defendant T.D. Williamson (TDW) issued a group health insurance policy to Plaintiff's husband, a TDW employee. The policy covered Plaintiff Zeda Simpson as a beneficiary. Plaintiff filed for divorce in July 2000. Over the course of that summer, the divorce court entered three interlocutory protective orders requiring Plaintiff's husband to stay away from her and the marital residence. Prior to entry of a final divorce decree, Plaintiff sent a letter to TDW. Plaintiff requested that TDW reveal no information to her "estranged husband" about medical services she received. TDW concluded a "legal separation" had occurred based on Plaintiff's letter and the divorce court's

interlocutory orders. TDW determined the parties' "legal separation" was a "qualifying event" under COBRA. As plan administrator, TDW sent Plaintiff notice that she could elect continued health insurance coverage under COBRA. Plaintiff objected to TDW's determination but nonetheless elected coverage.

Neither Plaintiff nor her husband paid the premiums due under her COBRA election. In June 2002, TDW notified Plaintiff that it had canceled her health insurance for non-payment of premiums. The following month, Plaintiff notified TDW that the divorce court had entered a final divorce decree and she wished to elect COBRA coverage. See 29 U.S.C. § 1166(a)(3) (requiring notice to the employer of a § 1163(3) "qualifying event" within 60 days). TDW replied that Plaintiff's COBRA rights had expired under her prior election due to nonpayment of premiums and could not be reinstated.

Plaintiff filed suit in federal court alleging TDW denied her rights under COBRA.[1] Plaintiff sought health insurance coverage from TDW, reimbursement for uninsured medical expenses and alternate health insurance premiums, and attorney fees. The magistrate judge held the divorce court's protective orders did not constitute a "legal separation" and, therefore, did not constitute a

---

[1] Although Plaintiff urged the Oklahoma divorce court to address the COBRA issue, the court declined to do so, stating on the record that the "matter regarding COBRA is found to be a civil matter and irrelevant to this court." See Simpson II, 321 F. Supp. 2d at 1250.

"qualifying event" under COBRA. Accordingly, TDW's notice to Plaintiff of her COBRA rights prior to entry of the final divorce decree was invalid. The district court granted Plaintiff's requested relief and imposed a statutory penalty against TDW. See 29 U.S.C. § 1132(c)(1).

## II.

COBRA does not define the term "legal separation," and we have not found any circuit court authority defining the term as used in § 1163(3). [2] The case we find most analogous is Nehme v. I.N.S., 252 F.3d 415 (5th Cir. 2001). In that case, the Fifth Circuit interpreted the term "legal separation" in the context of an immigration case. The relevant portion of the applicable statute provided that "when there ha[d] been a legal separation of the parents," a minor child born outside the United States became a citizen if the parent having legal custody was naturalized. Noting the lack of any "ready-made federal body of law on domestic relations," the court looked to the various state laws to formulate a federal standard. Nehme, 252 F.3d 426 & n.11 (citing state laws providing for legal separation); see also De Sylva v. Ballentine, 351 U.S. 570, 580 (1956).

---

[2] An employer's insurance plan might purport to define the term "legal separation." TDW's health insurance plan does not do so. We express no opinion on how a plan's definition might affect the outcome of a similar case. Cf. Goodall v. The Gates Corp., 1994 WL 584555, at **2-3 (10th Cir. 1994) (unpublished disposition).

The Fifth Circuit concluded that a "legal separation" is uniformly understood to mean "a formal, *judicial* alteration of the marital relationship." Nehme, 252 F.3d at 426; see also Brissett v. Ashcroft, 363 F.3d 130, 134 (2d Cir. 2004). In other words, state laws allowing "legal separation" uniformly "contemplate a judicial decree." Nehme, 252 F.3d at 426. A decree is "a judicial decision in a court of equity, admiralty, divorce, or probate – similar to a judgment of a court of law." Black's Law Dictionary 419 (7th ed. 1999). Like a judgment, a decree connotes finality.

The Fifth Circuit's view is consistent with the fact that an action for "legal separation" is separate and distinct from an action for divorce or dissolution of marriage. See, e.g., Okla. Stat. tit. 43, §§ 103, 105 (referring to actions "for divorce, annulment of a marriage, *or* legal separation") (emphasis added). The genesis of such action lies in the common law's divorce "mensa et thoro," – or divorce "from bed and board," – the forebearer of the modern day action for "legal separation." See Holleyman v. Holleyman, 78 P.3d 921, 932 n.17 (Okla. 2003) (Opala, V.C.J., concurring). A decree of legal separation directs the parties to live apart *and* defines the parties legal rights and obligations in regard to custody, support, property division, and/or maintenance. See, e.g., Okla. Stat. tit. 43, § 129 (authorizing an action for alimony without a divorce); see also id. § 108 (authorizing order for custody, maintenance and/or property division where

-6-

the court refuses to grant a divorce).  But unlike a divorce decree, a decree of legal separation does not dissolve the marriage bond. [3]

When defining a "qualifying event" in COBRA § 1163(3) to include "divorce *or* legal separation" (emphasis added), Congress undoubtedly was cognizant of state domestic laws and the distinction they draw between an action for divorce and an action for legal separation.   Surely then, a  divorce court's interlocutory protective order pending a divorce does not constitute a "legal separation" under § 1163(3).  As illustrated by the numerous protective orders entered in the subject divorce proceeding, such a rule not only would engender uncertainty for employees, employers, qualified beneficiaries, and plan administrators as to what constitutes "legal separation," but also would jeopardize the continuation of the group health insurance coverage which Congress sought to ensure in enacting COBRA.   See H.R. Rep. No. 99-241, pt. I, at 44 (1985),   reprinted in  1986 U.S.C.C.A.N. 579, 622.

---

[3] At the time Plaintiff filed her divorce petition, Oklahoma's domestic relations statutes referred to an action for legal separation as an action for "separate maintenance."  During the pendency of the divorce proceedings, Oklahoma amended its domestic relations laws to refer specifically to actions for "legal separation."  See LeCrone v. LeCrone, 596 P.2d 1262, 1264 (Okla. 1979) (equating separate maintenance action with legal separation).  Like COBRA, Oklahoma law does not define "legal separation" despite the use of the term in domestic relations statutes and case law.  Compare Nehme, 252 F.3d at 426 (identifying four states that provide a statutory definition for "legal separation.").

TDW's contrary interpretation would place qualified beneficiaries of an employer's group health insurance plans at the mercy of plan administrators by allowing the latter to determine what constitutes a "qualifying event" under § 1161(a). Yet § 1166(a)(3) places the initial burden on the "covered employee or qualified beneficiary" to notify the plan administrator of a "qualifying event" as defined in § 1163(3). COBRA's purpose to ensure beneficiaries continuing affordable health care coverage during transitional periods is best served by relieving, to the extent possible, all interested parties from the responsibility of making legal judgments. See Phillips v. Saratoga Harness Racing, Inc., 240 F.3d 174, 179 (2d Cir. 2001). We conclude a "legal separation," and thus a "qualifying event," occurs within the meaning of COBRA §§ 1161(a) and 1163(3) only upon entry of a *final* court decree adjudicating the parties legal rights and obligations but preserving the marriage bond.

AFFIRMED. [4]

---

[4] TDW also challenges the district court's awards to Plaintiff of out-of-pocket expenses, attorney fees, and a statutory penalty. TDW argues generally that Plaintiff failed to mitigate her damages and that it acted in good faith. This is inadequate appellate argument. TDW has not cited a single authority to support its arguments; nor has TDW argued that its positions are sound despite a lack of supporting authority or in the face of contrary authority. See Brownlee v. Lear Siegler Mgmt. Servs. Corp., 15 F.3d 976, 977-78 (10th Cir. 1994) (holding appellate argument inadequate where party failed to "cite a single authority or even present a developed argument"). Accordingly, we decline to consider these arguments.