**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 19, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

COPE, a/k/a Citizens for Objective Public
Education, Inc.; CARL REIMER; MARY
ANGELA REIMER; B.R., a Minor, by and
through her parents Carl and Mary Angela
Reimer as Next Friends; H.R., a Minor, by
and through her parents Carl and Mary
Angela Reimer as Next Friends; B.R., a
Minor, by and through his parents Carl and
Mary Angela Reimer as Next Friends; N.R.
a Minor, by and through his parents Carl
and Mary Angela Reimer as Next Friends;
SANDRA NELSON; J.N., a Minor, by and
through his parent Sandra Nelson as Next
Friend; LEE MORSS; TONI MORSS;
L.M., a Minor, by and through her parents
Lee and Toni Morss as Next Friends; R.M.,
a Minor, by and through his parents Lee
and Toni Morss as Next Friends; A.M., a
Minor, by and through his parents Lee and
Toni Morss as Next Friends; MARK
REDDEN; ANGELA REDDEN; M.R., a
Minor, by and through his parents Mark
Redden and Angela Redden as Next
Friends; BURKE PELTON; KELCEE
PELTON; B.P., a Minor, by and through
her parents Burke Pelton and Kelcee Pelton
as Next Friends; L.P., a Minor, by and
through her parents Burke Pelton and
Kelcee Pelton as Next Friends;  K.P., a
Minor, by and through her parents Burke
Pelton and Kelcee Pelton as Next Friends;
MICHAEL LEIBY; BRE ANN LEIBY;
E.L., a Minor, by and through his parents
Michael Leiby and Bre Ann Leiby as Next
Friends; P.L., a Minor, by and through his
parents Michael Leiby and Bre Ann Leiby

No. 14-3280

as Next Friends; Z.L., a Minor, by and through his parents Michael Leiby and Bre Ann Leiby as Next Friends; JASON PELTON; ROBIN PELTON; C.P., a Minor, by and through her parents Jason Pelton and Robin Pelton as Next Friends; S.P., a Minor, by and through his parents Jason Pelton and Robin Pelton as Next Friends; S.P., a Minor, by and through her parents Jason Pelton and Robin Pelton as Next Friends; C.P., a Minor, by and through her parents Jason Pelton and Robin Pelton as Next Friends; CARL WALSTON; MARISEL WALSTON; H.W., a Minor, by and through his parents Carl Walston and Marisel Walston as Next Friends; DAVID PRATHER; VICTORIA PRATHER,

Plaintiffs - Appellants,

v.

KANSAS STATE BOARD OF EDUCATION; JANET WAUGH, Member of the Kansas State Board of Education, in her official capacity only; STEVE ROBERTS, Member of the Kansas State Board of Education, in his official capacity only; JOHN W. BACON, Member of the Kansas State Board of Education, in his official capacity only; CAROLYN L. WIMS-CAMPBELL, Member of the Kansas State Board of Education, in her official capacity only; SALLY CAUBLE, Member of the Kansas State Board of Education, in her official capacity only; DEENA HORST, Member of the Kansas State Board of Education, in her official capacity only; KENNETH WILLARD, Member of the Kansas State Board of Education, in his official capacity only; KATHY BUSCH, Member of the Kansas

-2-

State Board of Education, in her official capacity only; JANA SHAVER, Member of the Kansas State Board of Education, in her official capacity only; JIM MCNIECE, Member of the Kansas State Board of Education, in his official capacity only; KANSAS STATE DEPARTMENT OF EDUCATION; BRAD NEUENSWANDER, Acting Commissioner of the Kansas State Department of Education, in his official capacity only,[*]

       Defendants - Appellees.

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 5:13-CV-04119-DDC-JPO)**

_____

John H. Calvert, Calvert Law Offices, Kansas City, Missouri, (Douglas J. Patterson, Property Law Firm, LLC, Leawood, Kansas, and Kevin T. Snider, Pacific Justice Institute, Sacramento, California, with him on the briefs), for Plaintiffs-Appellants.

Dwight R. Carswell, Assistant Solicitor General, (Jeffrey A. Chanay, Chief Deputy Attorney General, Cheryl L. Whelan, Assistant Attorney General, and Stephen O. Phillips, Assistant Attorney General, Office of the Attorney General for the State of Kansas, Topeka, Kansas, and R. Scott Gordon, Kansas State Department of Education, Topeka, Kansas, with him on the briefs), for Defendants-Appellees.

_____

Before **LUCERO**, **MATHESON**, and **PHILLIPS**, Circuit Judges.

_____

**LUCERO**, Circuit Judge.

_____

---

[*] Pursuant to Fed. R. App. P. 43(c)(2) Brad Neuenswander replaces Diane DeBacker as Commissioner of the Kansas State Department of Education.

In 2013, the Kansas Board of Education (the "Board") adopted curriculum standards establishing performance expectations for science instruction in kindergarten through twelfth grade. Appellants—Citizens for Objective Public Education, Kansas parents, and school children (collectively, "COPE")—contend that although the standards purport to further science education, their concealed aim is to teach students to answer questions about the cause and nature of life with only non-religious explanations. COPE thus claims injury under the Establishment Clause because: (1) the Board's adoption of the Standards has communicated a religious symbol or message and breached plaintiff parents' trust; and (2) Kansas schools' implementation of the Standards is imminent and will result in anti-religious instruction. COPE also asserts two plaintiffs have standing as taxpayers who object to their tax dollars being used to implement the Standards. The district court disagreed, and dismissed the suit without prejudice for lack of standing.

We conclude all three theories of injury fail. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

In 2011, the National Research Council[†] published the Framework for K-12 Science Education: Practices, Crosscutting Concepts, and Core Ideas (the

---

[†] The National Research Council is the principal operating agency of the National Academy of Sciences—a non-governmental organization organized under Congressional charter in 1863 to advise the federal government on scientific and engineering issues.

"Framework").  The Framework was intended to "articulate a broad set of expectations for students in science" through twelfth grade.  Based on the Framework, a group of 26 states developed and published the Next Generation Science Standards (the "NGSS") to "provide performance expectations that depict what . . . student[s] must do to show proficiency in science."  In 2013, the Board adopted the Framework and NGSS (together, the "Standards") pursuant to a Kansas state law requiring the Board to adopt curriculum standards.  Kan. Stat. § 72-6479(b).[‡]

As the Standards themselves state, they are "not intended to define course structure."  Instead, Kansas law provides that they are guideposts for school districts, which retain control to shape and adopt their own curricula.  Kan. Stat. § 72-6479(b) (curriculum standards "shall [not] be construed in any manner so as to impinge upon any district's authority to determine its own curriculum").  Thus, the Standards simply establish performance expectations for what students should "know and be able to do" at each grade level.[§]  Kan. Admin. Regs. § 91-31-31(d).  Accordingly, they

---

[‡] The parties cite Kan. Stat. § 72-6439.  Kansas repealed § 72-6439 effective July 1, 2015.  2015 Kansas Session Laws Ch. 4 § 81.  But the legislature enacted a new statute that contains all of the provisions previously in § 72-6439.  2015 Kan. Sess. Laws Ch. 4 § 20; Kan. Stat. § 72-6479.  For ease, we cite the new statute.

[§] For example, the "Biological Evolution" section of the Standards states that by the end of grade two students should know that "[s]ome kinds of plants and animals that once lived on Earth (e.g., dinosaurs) are no longer found anywhere"; "[l]iving things can only survive where their needs are met"; and "there are many different kinds of living things in any area, and they exist in different places on land and in water."

acknowledge that they "do not prescribe specific curricula, [although] they do provide some criteria for designing curricula." And they expressly state that teachers may go "beyond the standards to ensure their students' needs are met" and that educators and curriculum developers maintain a "great deal of discretion."

COPE is an organization formed to promote the religious rights of parents, students, and taxpayers. Its members include individuals whose children are, or expect to be, enrolled in Kansas public schools. COPE alleges that the Standards violate the Establishment Clause, U.S. Const. amend. I, by seeking to establish a non-religious worldview in the guise of science education.[**] It argues that such a worldview will be inculcated in children throughout their thirteen-year public school experience by requiring students, beginning in kindergarten, to answer questions about the cause and nature of life with only scientific, non-religious explanations. COPE contends that the Standards omit relevant evidence, and are driven by a covert

_____

[**] COPE's complaint also alleges that the Standards violate the First Amendment's Free Exercise and Free Speech Clauses and the Fourteenth Amendment's Equal Protection Clause. COPE makes only passing references to these claims on appeal. In particular, COPE does not identify or apply the test for determining whether a cognizable injury exists for these claims. See Ward v. Utah, 321 F.3d 1263, 1267 (10th Cir. 2003) (test for speech claim); see also Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 666 (1993) (test for equal protection claim). Instead, COPE limits its arguments to demonstrating standing under the Establishment Clause. Accordingly, any challenge to the district court's dismissal of COPE's Free Exercise, Free Speech, and Fourteenth Amendment claims is waived, Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."), and we exclusively consider whether COPE has suffered a cognizable injury under the Establishment Clause.

attempt to guide children to reject religious beliefs. However, COPE appears not to object to the Standards' methods generally, having conceded that the methods "ha[ve] utility in many areas of science." Nor does COPE categorically object to teaching evolution or origins science. Rather, it proposes that all biological theories, including evolution, should be taught "objectively to generate a religiously neutral effect." COPE also objects to teaching origins science to young children before they are mature enough to critically analyze scientific theory. Thus, it seeks a declaration that the Standards violate the Establishment Clause. It further seeks an injunction against implementation of the Standards in their entirety or, in the alternative, an injunction against teaching origins science until high school, and then requiring that it be taught in a manner COPE believes is objective.

## II

The district court held that it lacked subject matter jurisdiction over this suit because COPE lacks standing. We review the district court's determination regarding subject matter jurisdiction de novo. Niemi v. Lasshofer, 770 F.3d 1331, 1344 (10th Cir. 2014). "For purposes of standing, we must assume the Plaintiffs' claim has legal validity." Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1092-93 (10th Cir. 2006) (en banc). However, Plaintiffs must show an "injury in fact" that is: (1) "concrete, particularized, and actual or imminent"; (2) "fairly traceable to the challenged action"; and (3) "redressable by a favorable ruling." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013).

In the Establishment Clause context, "standing is clearly conferred by [injury to] non-economic religious values" but litigants must "identify a personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees." Awad v. Ziriax, 670 F.3d 1111, 1122 (10th Cir. 2012). As the party invoking federal jurisdiction, COPE bears the burden of establishing these elements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). And "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. at 561. At the pleading stage, we "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice" to support the claim. Lujan, 504 U.S. at 561. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, plaintiffs must adequately allege a plausible claim of injury. Walker, 450 F.3d at 1089.

COPE argues it suffered three injuries sufficient to support standing. It contends first that the adoption of the standards created an actual injury both by adopting a religious symbol and by breaching parents' trust in the Kansas school system. It also argues that future injury is imminent because the standards compel

Kansas schools to teach objectionable material. Finally, it alleges that two appellants have standing as taxpayers who object to their tax dollars being used for religious (or anti-religious) purposes. Each of COPE's arguments fails.

## A

COPE alleges that the Board's act of adopting the Standards, without more, created concrete injury-in-fact. COPE argues the Standards are a symbol of a non-religious worldview, adoption of which violates the "right to be free from government that favors one religious view over another." To support this claimed injury, COPE relies on Awad, 670 F.3d 1111, and American Atheists, Inc. v. Davenport, 637 F.3d 1095 (10th Cir. 2010). However, COPE does not allege any facts that suggest injury under either case.

In Awad, we held that the adoption of a statute that singled out an individual religion for disfavored legal treatment is sufficient to cause injury to a member of that religion for standing purposes under the Establishment Clause. 670 F.3d at 1122. The relevant statute in Awad targeted the Muslim religion explicitly and interfered with the plaintiff's ability to practice his faith and access legal processes. Id. at 1120, 1122. We held that a statute that "expressly condemns" a particular religion and exposes its members to such disfavored treatment causes sufficient injury to support standing. Id. at 1123. But unlike the statute in Awad, the Standards do not condemn any or all religions and do not target religious believers for disfavored treatment. And COPE offers only threadbare assertions that the Standards intend to promote a non-religious worldview. Thus, COPE's allegations regarding

-9-

adoption amount to psychological consequences produced by observation of conduct with which it disagrees. <u>Awad</u>, 670 F.3d at 1122. This injury does not suffice. <u>Id.</u> Similarly, in <u>American Atheists, Inc.</u>, we held plaintiffs had standing to challenge the placement of crosses along public roadsides as government-sponsored religious symbols with which they had personal and unwelcome contact. 637 F.3d at 1114-1115. But, again, unlike the plaintiffs in <u>American Atheists</u>, COPE does not offer any allegations to support the conclusion that the Standards are a government-sponsored religious symbol.

COPE also contends that the adoption breached its trust by violating both the parents' right to direct their children's religious education, and the children's right to public education without religious (and non-religious) indoctrination, contrary to <u>Edwards v. Aguillard</u>, 482 U.S. 578 (1962).[††] In <u>Edwards</u>, the Court held that it is the parents' right to direct the religious education of their children. 482 U.S. at 583-84. The Court noted that public schools must uphold the trust that the State will not use the classroom to "advance religious views that may conflict with the private beliefs of the student and his or her family," <u>id.</u>, and that families "condition their

---

[††] <u>Edwards</u> and other cases COPE relies on do not discuss standing, and so do not stand for the proposition that a standing defect did not exist on the facts of those cases. <u>Arizona Christian Sch. Tuition Org. v. Winn</u>, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed."). Nevertheless, the analysis in these cases is instructive. <u>Accord</u> <u>Awad</u>, 670 F.3d at 1121 n.6 (finding previous merits decisions instructive in defining the contours of standing under the Establishment Clause).

trust [of public schools] on the understanding that the classroom will not purposely be used to advance religious views," id. at 584.[‡‡] COPE argues that the Standards violate this trust by sending a message of religious endorsement to guide school districts; and by causing fear and anxiety that the students may have to opt-out of religiously biased classroom instruction. However, as noted supra, COPE does not offer any facts to support the conclusion that the Standards condemn any religion or send a message of endorsement. And any fear of biased instruction is premised on COPE's predictions of school districts' responses to the Standards—an attempt by COPE to recast a future injury as a present one. For reasons discussed infra, we reject this claim as well.

**B**

COPE also asserts injury because local school districts' potential implementation of the Standards will cause science to be taught in a manner that violates religious liberties. For this potential future injury to support standing, the injury must be "certainly impending." Clapper, 133 S. Ct. at 1147. But COPE acknowledges that the statute requiring the Board to adopt curriculum standards expressly preserves districts' authority to determine their own curricula. Kan. Stat.

---

[‡‡] Although we do not reach the merits, we note that COPE asks the court to implement a requirement identical to the one imposed by the statute in Edwards. COPE frames the materialism of evolutionary theory as a religious belief competing with COPE's own teleological religion, and demands that if evolution is taught, teleological origins theories must also be taught. The Edwards Court expressly held such a requirement unconstitutional. 482 U.S. at 592.

§ 72-6479. And COPE concedes that it is possible that districts may not adopt the Standards, even if it perceives that possibility as remote.[§§] Moreover, even if implementation were certainly impending, we find nothing to suggest that <u>injury</u> from implementation is also impending. COPE alleges injury because it believes the Standards do not reflect an objective or neutral view of evolution, and require schools to teach science to young children who cannot critically analyze scientific theories. These claimed injuries would result from what is allegedly <u>not</u> in the Standards—an objective view of origins science. But nothing prevents school districts from adding to or altering the Standards as they develop curricula.[***] And the Standards themselves encourage districts to teach the limits of scientific knowledge. They state

---

[§§] COPE argues that implementing the Standards is effectively or practically required—and thus certainly impending—because: (1) Kansas law requires that districts meet or exceed minimum requirements, and the adopted Standards can be viewed as the baseline for these requirements; (2) the Standards are intended to, and do, guide local revisions to curricula; (3) the Board controls accreditation and financing for teacher training, and may use these tools to guide curriculum development; (4) the districts have implemented similar standards in the past; (5) some districts are in the process of implementing the Standards; and (6) the Standards are detailed and comprehensive, so even though districts may change them, it is easier for them to simply adopt the Standards as-is. However, COPE did not raise any of these arguments below, and they are waived. <u>Wilburn v. Mid-S. Health Dev., Inc.</u>, 343 F.3d 1274, 1280 (10th Cir. 2003). Moreover, these factors do not eliminate the districts' discretion, and so do not demonstrate that implementation is beyond doubt or certainly impending. <u>Clapper</u>, 133 S. Ct. at 1147.

[***] COPE argues that districts will likely implement the Standards without change. It is difficult to grasp how districts would do so, given the Standards' statements that they are not curricula, and their plea that districts reach beyond the Standards to ensure students' needs are met. Nevertheless, COPE asserts that implementation-without-change is an option, and we have assumed that assertion is accurate for purposes of our analysis.

-12-

that students should "develop an understanding that . . . science and engineering . . . are human endeavors," and that some science- or engineering-related questions have "moral . . . underpinnings that vary across cultures," the answers to which are "not solved by scientific and engineering methods alone." Moreover, the Kansas NGSS Review Committee expressly recommends that districts "push beyond these standards" as they develop curricula. Because the Standards expressly recommend objective curricula, and the committee advises districts to add to the Standards, districts may choose to delve deeper into the limitations of the scientific method or to teach alternative origins theories.[†††] In the face of this uncertainty, we cannot know whether COPE will find the curricula districts adopt adequately objective.[‡‡‡]

In sum, because the districts may choose not to adopt the Standards, or may alter the Standards in ways that alleviate Appellants' concerns, potential future injury

---

[†††] Relatedly, COPE argues that it will be onerous or impossible for objecting parents to opt-out of the Standards, which will permeate all aspects of school curricula. But until school districts implement the Standards in an objectionable way, there is nothing to opt-out of.

[‡‡‡] Regardless, COPE has not shown that these alleged future injuries are fairly traceable to the challenged action. Id. COPE acknowledges that evolution is the dominant origins theory in American culture, which suggests COPE would fear objectionable teaching of origins sciences even without the Standards' recommendations. This suggestion is supported by COPE's assertion below that the previous version of the Standards incorporated the same methods COPE finds objectionable in the new version. Thus, the alleged absence of objective curricula is not fairly traceable to the Standards.

-13-

from the Standards themselves is speculative and insufficient to support standing.[§§§]

---

[§§§] COPE's alleged injuries are also not redressable by a favorable ruling. Id. COPE asks us to issue a declaratory judgment and to enjoin the Standards either entirely or as applied to elementary and middle school students, and to require objective teaching of origins science in high school. But none of these remedies would redress the alleged threat of a biased, subjective version of evolution. Again, schools may incorporate the Standards or other curricula regardless of whether the Board has officially adopted them. And even with a favorable ruling from this court, schools could teach evolution in a manner COPE finds objectionable. Implementation therefore turns on the decisions of third-parties that are not before us. Allen, 468 U.S. at 757. We will not "endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." Clapper, 133 S. Ct. at 1150.

## C

Finally, two appellants assert standing on the theory that they object to their tax dollars being spent to support the Standards. Appellants do not raise this argument in their opening brief, and so it is waived. Adler, 144 F.3d at 679.

## III

The district court's dismissal for lack of standing is **AFFIRMED**.