FILED
United States Court of Appeals
Tenth Circuit

April 2, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MONTE WHITEHEAD,

    Plaintiff - Appellant,

v.

GREG MARCANTEL; OTERO COUNTY
BOARD OF COUNTY
COMMISSIONERS; MANAGEMENT
AND TRAINING CORPORATION;
JAMES FRAWNER; RICHARD
MARTINEZ; FNU BOYD, Lieutenant;
FNU EASON, Lieutenant; LARRY
PHILLIPS; FNU CRUZ; C. PASCALE;
LARRY MONK; FNU LNU, unnamed
nurses; FNU WATERS; FNU
PROSPERO; FNU LNU, unnamed
correctional officer; FNU MORENO;
KEEFE CORPORATION; FNU SMITH,
Sergeant,

    Defendants - Appellees.

No. 18-2021
(D.C. No. 2:17-CV-00275-RJ-KK)
(D. N.M.)

_____

**ORDER AND JUDGMENT** [*]
_____

Before **HOLMES**, **O'BRIEN**, and **CARSON**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Pro se New Mexico state prisoner Monte Whitehead appeals the district court's orders (1) dismissing his 42 U.S.C. § 1983 claims for failure to state a claim, (2) dismissing his claims against defendant Eason for insufficient service of process, and (3) denying his motions to amend the complaint and to supplement the pleadings. Mr. Whitehead does not challenge the district court's order remanding his state-law claims to state court. We exercise jurisdiction under 28 U.S.C. § 1291. We affirm in part, vacate and remand in part, and reverse and remand in part.

## I.    BACKGROUND

Mr. Whitehead is an inmate at the Otero County Prison Facility (OCPF) in Otero County, New Mexico. Management and Training Corp. (MTC), a private company, operates OCPF. Mr. Whitehead originally filed suit in New Mexico state court alleging federal constitutional claims and claims under the New Mexico Tort Claims Act. In his complaint, Mr. Whitehead asserted that while incarcerated at OCPF, various prison personnel (the prison-official defendants) violated his constitutional rights.[1] He also asserted constitutional claims against the prison

---

[1] "To state a claim under § 1983, a plaintiff . . . must show that the alleged [constitutional] deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *accord Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1207 (10th Cir. 2005). Neither the district court nor the parties question that, during the events material here, MTC and its employees acted under color of state law and were subject to suit under § 1983. We have no reason to question this position. *See Evans v. Newton*, 382 U.S. 296, 299 (1966) ("[W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations."); *Smith v. Cochran*, 339 F.3d 1205, 1215–16 (10th Cir. 2003) ("[P]ersons to whom the state delegates its penological functions,

2

commissary vendor, Keefe Commissary Network ("Keefe").[2]

Defendant Otero County Board of County Commissioners ("Otero County") removed the case to federal district court. The district court dismissed the federal claims under Federal Rule of Civil Procedure 12(b)(6), declined to exercise supplemental jurisdiction over the state claims, and remanded the state claims to the state court. Mr. Whitehead then filed a motion to reconsider, which the district court denied.

## II. JURISDICTION

"[W]e have an independent duty to examine our own jurisdiction." *Williams v. Akers*, 837 F.3d 1075, 1077 n.2 (10th Cir. 2016) (internal quotation marks omitted). In his notice of appeal, Mr. Whitehead designated only the order denying his postjudgment motion as the order being appealed. *See* Fed. R. App. P. 3(c)(1)(B) (stating the notice of appeal must "designate the judgment, order, or part thereof being appealed"). "Rule 3(c)(1)(B)'s designation requirement is jurisdictional." *Williams*, 837 F.3d at 1078. But "[w]hen a notice of appeal fails to designate the

---

which include the custody and supervision of prisoners, can be held liable for violations of the Eighth Amendment.").

[2] In addition to the named defendants, the complaint caption named as defendants "unnamed nurses" and "unnamed correctional officer." Mr. Whitehead does not pursue claims against the unnamed defendants except to allege generally that unidentified nurses failed to provide him medication. Courts generally permit a plaintiff to sue unnamed defendants, but the plaintiff must "provide[] an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served." *Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996). Mr. Whitehead has not described the "unnamed nurses" or the "unnamed correctional officer," so we do not consider the claims against them.

order from which the appeal is taken, our jurisdiction will not be defeated if other papers filed within the time period for filing the notice of appeal provide the 'functional equivalent' of what Rule 3 requires." *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997). Mr. Whitehead's motion for leave to proceed in forma pauperis, filed within the time for filing a notice of appeal, "clearly sets forth [his] intention to appeal from the [Memorandum Opinion and Order dismissing his claims], and [the defendants] had adequate notice of the issue[s] being appealed and will not be prejudiced." *Id.* Accordingly, we have jurisdiction over both the order granting dismissal and the order denying postjudgment relief.

## III.  FAILURE TO STATE A CLAIM FOR RELIEF

### 1. Standards of Review

We review de novo the district court's order granting dismissal under Rule 12(b)(6), "accept[ing] the facts alleged in the complaint as true and view[ing] them in the light most favorable to the plaintiff[]." *Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018) (internal quotation marks omitted). To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare

4

recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim for relief. *Id.*

"Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (brackets, citation, and internal quotation marks omitted).

## 2. Denial of Hardback Books, Internet Materials, and Newspapers; Approved-Vendors Requirement[3]

Mr. Whitehead's complaint asserts that certain defendants[4] violated his First Amendment rights by preventing him from receiving hardback books, books from non-approved vendors, information from the internet, and newspaper articles sent by mail. "Inmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison." *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004). We generally apply the four-factor test from *Turner v. Safley*, 482 U.S. 78, 89 (1987), to evaluate whether a prison regulation that "'impinges on inmates' constitutional rights . . . is reasonably related to legitimate penological

---

[3] Mr. Whitehead's first issue on appeal asserts that the district court required him to cite legal authorities to survive the motions to dismiss. The court did not. We address below the allegations in the complaint as relevant to each substantive claim.

[4] Mr. Whitehead names the following defendants in regard to this claim: Marcantel, Otero County, MTC, Frawner, Martinez, Phillips, Cruz, and Moreno.

interests.'" *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (quoting *Turner*, 482 U.S. at 89).[5] However, "in ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is reasonably related to a legitimate penological interest." *Al-Owhali*, 687 F.3d at 1240 (internal quotation marks omitted).

To state a claim that a prison regulation is unconstitutional, an inmate must "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Id.* (internal quotation marks omitted). An inmate is not required to "identify every potential legitimate interest and plead against it." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010). "It is sufficient that he plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Id.*

Mr. Whitehead alleges that certain defendants limited his access to information which prevented him from writing opinion articles, engaging in religious reading, and

---

[5] The *Turner* factors are:

(1) whether a rational connection exists between the prison policy [or] regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) (citing *Turner*, 482 U.S. at 89–91).

staying current with developments in the veterinary profession. He alleged in his complaint that he requested books on religion and veterinary medicine, but the defendants denied his requests because the books were hardback. The defendants also denied his requests for books from non-approved vendors, newspaper articles sent to him by mail, and access to the internet.

In addition to the enumerated allegations, the complaint contains several attachments.[6] The attachments refer to prison policies that (1) limited reading material to that sent from approved vendors, R. at 193; (2) prohibited all hardcover books, *id.* at 186; Aplee. Supp. App at 185; (3) prohibited Mr. Whitehead from receiving newspaper articles through the mail, R. at 169; and (4) prohibited access to the internet absent warden approval, *id.* at 173.

The defendants do not articulate any legitimate penological interests for these restrictions. *Cf. Al-Owhali*, 687 F.3d at 1241 (reviewing dismissal of complaint under Rule 12(b)(6), discussing the prison officials' proffered justifications for the restrictions placed on the prisoner). In their appellate brief, the defendants cite only to Mr. Whitehead's complaint for their general contention that "[t]here is a rational connection between [prison] mail and book regulations and a legitimate interest

---

[6] The attachments provide additional facts that establish more than "a sheer possibility that a defendant has acted unlawfully, or facts that are merely consistent with a defendant's liability." *Gee*, 627 F.3d at 1187 (internal quotation marks omitted); *see Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint."). Thus, the court may properly rely on these attachments to determine whether Mr. Whitehead adequately pleaded this claim. *See Gee*, 627 F.3d at 1187.

regarding prison safety and security." Aplee. Prison Officials' Br. at 22 (citing Aplee. Supp. App. at 55–62).

The district court ruled that Mr. Whitehead did "not allege that the restrictions on material by OCPF [were] not reasonably related to prison security concerns, but, instead, simply disagree[d] with the restrictions." R. at 984. The district court further ruled that "the fact that [Mr. Whitehead] was able to write his article demonstrates that the restrictions did not impair his constitutional right of free speech and press." *Id.* But the district court's conclusions do not address Mr. Whitehead's factual allegations that he wanted materials for religious and veterinary study. Moreover, the district court did not address Mr. Whitehead's claims based on the prohibition of hardback books, the limit or ban on internet use, the ban on articles received in the mail, or the limitations due to the approved-vendor list. Generally, "a federal appellate court does not consider an issue not passed upon below." *Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992) (quoting *Singleton v. Wulff,* 428 U.S. 106, 120 (1976)). Therefore, we vacate the dismissal of those claims and remand them to the district court for consideration in the first instance, which may include allowing the prison-official defendants to proffer a legitimate penological reason for the restrictions.

### 3. Deliberate Indifference to Prisoner's Medical Needs

Mr. Whitehead alleges defendant Monk, a prison nurse, violated his Eighth Amendment rights when Monk told Mr. Whitehead to continue to take his prescribed medication following an episode of syncope,[7] even though Mr. Whitehead questioned the medication's appropriateness. He further alleges that Monk prevented him from seeing a physician for a month following the syncope episode.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted). Prison personnel "may thus be liable under § 1983 for indifference manifested in their response to the prisoner's needs or by intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014) (ellipses and internal quotation marks omitted).

"To state a denial of medical care claim, a plaintiff must satisfy both an objective and a subjective component." *Id.* at 430 (internal quotation marks omitted). To satisfy the objective component of a failure-to-treat claim, the prisoner's medical need must be sufficiently serious. *Id.* A medical need is sufficiently serious "if it is one that is so obvious that even a lay person would easily recognize the necessity for

---

[7] Syncope is "loss of consciousness from insufficient blood flow to the brain: faint." *Syncope, Merriam-Webster Online Dictionary,* https://www.merriam-webster.com/dictionary/syncope (last visited Mar. 8, 2019).

a doctor's attention." *Id.* (internal quotation marks omitted). To satisfy the subjective component, the prisoner must present "evidence of the prison official's culpable state of mind. He must show that the prison official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* (citation and internal quotation marks omitted). This standard is akin to criminal recklessness. *Farmer v. Brennan*, 511 U.S. 825, 836–37, 839–40 (1994).

The district court assumed the objective component had been satisfied. Accordingly, we address only the subjective component. To that end, Mr. Whitehead alleged that Monk examined him following the syncope episode and ensured he took his prescribed medication. Additionally, Mr. Whitehead claims that a month later his doctor discontinued one medication. That assertion, however, does not demonstrate that Monk was deliberately indifferent with regard to Mr. Whitehead's medical treatment. In fact, Mr. Whitehead does not allege that Monk "*knew* he faced a substantial risk of harm and disregarded that risk" by requiring Mr. Whitehead to continue taking his prescription medication. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (emphasis added). Accordingly, Mr. Whitehead fails to establish that Monk's actions were akin to criminal recklessness, and he does not satisfy the Eighth Amendment's subjective component. *Farmer*, 511 U.S. at 836–37, 839–40.

"At worst, [Mr. Whitehead alleged that Monk] misdiagnosed [Mr. Whitehead's] condition. But a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim." *Self v. Crum*, 439 F.3d

1227, 1234 (10th Cir. 2006); *see Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("[A] difference of opinion [between the prisoner and medical staff] does not support a claim of cruel and unusual punishment."). Indeed, as the Supreme Court has held, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. The district court properly dismissed Mr. Whitehead's Eighth Amendment deliberate indifference claim against Monk.

The complaint also alleges that defendant Pascale violated Mr. Whitehead's Eighth Amendment rights by inadequately responding to Mr. Whitehead's grievances. Specifically, he claims Pascale's responses to his grievances allowed Monk's actions to continue, and also caused unidentified nurses to fail to provide Mr. Whitehead his medications. This claim fails as well.

A § 1983 "plaintiff must show the defendant personally participated in the alleged violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). And, the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Here, because Mr. Whitehead complains only that Pascale denied his grievance, his claim is without merit. In this circuit, the mere denial of a grievance without any factual basis supporting an affirmative link between the denial and the alleged constitutional violation is fatal to a § 1983 claim. *Id.* Accordingly, the district court properly dismissed the Eighth Amendment claims against Pascale.

11

Mr. Whitehead abandons on appeal his Eighth Amendment claims against other defendants by failing to present those arguments in his opening brief. *See COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1223 (10th Cir. 2016) ("Appellants do not raise this argument in their opening brief, and so it is waived.").

## 4. Strip Searches Before Family Visits

The complaint also alleges that the prison policy requiring inmates to submit to strip searches before family visits violates the Fourth Amendment.[8] "The Fourth Amendment prohibits only unreasonable searches." *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559. With respect to the scope of the search, "[t]here can be no doubt that a strip search is an invasion of personal rights of the first magnitude." *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993). However, "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities," and "[t]he task of determining whether a policy is reasonably related to legitimate security interests is peculiarly

---

[8] Mr. Whitehead suggests in his appellate briefing that this claim could be construed as alleging an Eighth Amendment violation, and the district court should have evaluated it as such. Although courts construe a pro se litigant's arguments liberally, "this rule of liberal construction stops . . . at the point at which [the court] begin[s] to serve as his advocate." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009). Therefore, because this claim was not raised in the district court, we do not consider it. *See McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) ("[A]bsent extraordinary circumstances, we will not consider arguments raised for the first time on appeal.").

12

within the province and professional expertise of corrections officials." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012) (internal quotation marks omitted).

Mr. Whitehead failed to meet his burden with regard to this claim. In his brief, Mr. Whitehead acknowledges the legitimate penological interests for policies that require inmate strip searches following visits but alleges that pre-visit strip searches are unreasonable. He does not, however, allege any facts to support this assertion. Because Mr. Whitehead did not "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest," *Gee*, 627 F.3d at 1188, the district court correctly determined that this allegation failed to state a valid claim for relief.

### 5. Sales Taxes Levied on Commissary Purchases

The complaint alleges that Keefe charges sales tax on commissary purchases at OCPF, while inmates at other prisons are not charged sales tax.[9] Mr. Whitehead asserts that Keefe treats him and other sex offenders, a politically unpopular group, less favorably than other prisoners. He argues this disparity in treatment is a violation of the Equal Protection Clause.

Before we may consider the merits of this claim, we must determine the threshold matter of subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better*

---

[9] As part of this claim, Mr. Whitehead alleges that some of the prison-official defendants promoted a nefarious culture that allowed others to harass inmates. This allegation is too conclusory to state a claim. *See Iqbal*, 556 U.S. at 678.

*Env't*, 523 U.S. 83, 94 (1998) (stating courts cannot proceed in the absence of subject-matter jurisdiction). To invoke jurisdiction under § 1983, Mr. Whitehead must allege conduct under color of state law. Whether a defendant was a state actor for § 1983 purposes "is a question of law that we review *de novo*." *Nieto v. Kapoor*, 268 F.3d 1208, 1215 (10th Cir. 2001). We conclude that the complaint failed to provide sufficient factual matter to allege that Keefe was a state actor; therefore, the federal courts lack jurisdiction over this claim.

To establish that the conduct at issue constituted state action, Mr. Whitehead was required to show (1) the deprivation was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible," and (2) the party committing the deprivation is "a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

Mr. Whitehead's complaint alleges that "Keefe has a contract with OCPF (MTC) to provide commissary items to inmates held there," as well as to provide commissary items at other prisons. R. at 26. The complaint further alleges that Keefe taxes commissary items at OCPF, but not at other prisons. *Id.* at 66. It also asserts: "At all times material hereto Keefe and its officers, employees and agents acted under color of law and within the scope of their employment." *Id.* at 26.

The allegation that Keefe provided commissary services under a contract with MTC does not state a claim that Keefe acted under color of state law. *See Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442, 1448 (10th Cir. 1995) ("[T]he fact

14

that a private entity contracts with the government or receives governmental funds or other kinds of governmental assistance does not automatically transform the conduct of that entity into state action."). Moreover, the general allegations that Keefe and its employees acted under color of state law are "naked assertions devoid of further factual enhancement," and, therefore, insufficient to state a claim for relief, *Iqbal*, 556 U.S. at 678 (brackets and internal quotation marks omitted).

Mr. Whitehead's allegations are insufficient to establish subject-matter jurisdiction over this claim. Therefore, we affirm the district court's dismissal, but remand with directions to specify that the dismissal of this claim is without prejudice to its refiling. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.").

Mr. Whitehead further argues that Keefe violated the Commerce Clause by charging him sales tax on commissary purchases.[10] The federal courts lack jurisdiction to address the Commerce Clause claim because, as with the equal-

---

[10] In his appellate brief, Mr. Whitehead briefly mentions that he had asked the district court to consider his claim against Keefe under 42 U.S.C. § 1985. The argument on this point in his reply brief is similarly undeveloped. *See* Aplt. Reply Br. at 19 (arguing "that for purposes of bringing a claim under [§ 1985], Mr. Whitehead has plead [sic] class-based animus"). "This is inadequate appellate argument." *Simpson v. T.D. Williamson Inc.*, 414 F.3d 1203, 1206 n.4 (10th Cir. 2005) (holding appellate argument inadequate where party had "not cited a single authority to support its arguments" or "argued that its positions [were] sound despite a lack of supporting authority or in the face of contrary authority"). Therefore, we do not consider this claim. *See id.*

protection claim, Mr. Whitehead's allegations are insufficient to establish subject-matter jurisdiction over this claim. Although alleged state violations of the Commerce Clause may be challenged by suits brought under § 1983, *Dennis v. Higgins*, 498 U.S. 439, 447, 451 (1991), Mr. Whitehead has failed to sufficiently allege that Keefe was a state actor. And as with the equal-protection claim, we remand this claim with directions to specify that the dismissal on an alternative, jurisdictional basis, is without prejudice to its refiling.

**6. Claims Against Prison-Official Defendants in Their Official and Personal Capacities**

The complaint named the individual prison-official defendants in their official and personal capacities. "When a state official is sued in his or her official capacity, the Eleventh Amendment bars retrospective relief, usually in the form of money damages, because any such judgment is deemed directed at the state as the real party in interest rather than the nominal officer." *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1233 (10th Cir. 2010).

Even so, injunctive relief may be available against a defendant in his or her official capacity. *See Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998) ("[A] suit against a state official in his or her official capacity seeking prospective injunctive relief is not . . . a suit against the state for Eleventh Amendment purposes."). But while Mr. Whitehead requested injunctive relief in the district court, he did not argue this point in his opening brief. Therefore, this claim is

waived. *See COPE*, 821 F.3d at 1223 ("Appellants do not raise this argument in their opening brief, and so it is waived.").

On appeal, Mr. Whitehead challenges the dismissal of his personal-capacity claims against prison-official defendants Marcantel, Phillips, and Cruz. The complaint alleges that (1) defendant Marcantel was "responsible for the overall operation of the department including overseeing and implementing [prison] policy," R. at 19; (2) defendant Phillips "was responsible for handling grievance appeals" and for "ensur[ing] that state inmates had an opportunity to be heard," *id.* at 23; and (3) defendant Cruz "was responsible for making sure MTC and its employees . . . met the requirements of its contract with the state and that state policy was enforced," *id.*

These allegations fail to state a claim for several reasons. First, to the extent they allege liability based on supervisor status, "supervisor status by itself is insufficient to support liability," *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Second, they do not allege that any of these defendants personally participated in a violation of Mr. Whitehead's constitutional rights. *See Jenkins*, 81 F.3d at 994 (stating that a § 1983 "plaintiff must show the defendant personally participated in the alleged violation"). Finally, the allegations are "mere conclusory statements," insufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678.

**7. Claims Against Otero County Board of County Commissioners**

The complaint alleges that Otero County "failed to properly create, adopt and inculcate or simply adhere to appropriate policies and procedures . . . ; failed to properly train, monitor, supervise and discipline [various prison staff members] or

17

supervisory personnel[;] . . . and failed to otherwise institute adequate procedures and policies that would protect the rights of plaintiff."  R. at 57, 64–65, 69.  Thus, Mr. Whitehead alleges that Otero County "maintained a custom or policy which permitted or condoned the . . . violations of Plaintiff's Constitutional rights."  *Id.* at 57, 65, 69.  The district court dismissed the claims against Otero County because: (1) claims based on a *respondeat superior* theory cannot support a § 1983 claim; (2) the complaint failed to identify any Otero County policy, custom, or other practice; and (3) Mr. Whitehead's generalized allegations that Otero County allowed a nefarious culture to exist at the prison were factually insufficient to state a claim.

Mr. Whitehead did not challenge the dismissal of the claims against Otero County in his opening brief on appeal, but raised them in response to Otero County's brief.  "Arguments not clearly made in a party's opening brief are deemed waived." *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012).  Accordingly, this argument is waived and we do not address it.[11]

---

[11] "It is not sufficient to merely mention an issue in a reply brief."  *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997).  "[T]he reasons for [this] rule are two-fold: 'First, to allow an appellant to raise new arguments at this juncture would be manifestly unfair to the appellee who, under our rules, has no opportunity for a written response . . . .  Secondly, it would also be unfair to the court itself, which, without the benefit of a response from appellee to an appellant's late-blooming argument, would run the risk of an improvident or ill-advised opinion, given our dependence as an Article III court on the adversarial process for sharpening the issues for decision.'"  *Hill v. Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007) (quoting *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1278 (10th Cir. 1994)).

## 8. Grievance Procedure

The complaint asserts that some of the prison-official defendants[12] violated the rights of prisoners by thwarting and frustrating their attempts to resolve prison grievances.[13] But Mr. Whitehead cannot sue on behalf of other inmates. "A litigant may bring his own claims to federal court without counsel, but not the claims of others." *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (citing 28 U.S.C. § 1654). Therefore, we affirm the dismissal of this claim.

## IV. DISMISSAL OF CLAIMS AGAINST DEFENDANT EASON

Mr. Whitehead challenges the district court's grant of defendant Eason's motion to dismiss for insufficient process and insufficient service of process, pursuant to Fed. R. Civ. P. 12(b)(4) & (5). The district court held Mr. Whitehead's attempt to serve Eason, a former MTC employee, by serving the law firm representing other MTC employees was insufficient. Notably, Mr. Whitehead had earlier filed a motion seeking Eason's address so she could be served. *Cf. Martinez v. Winner*, 771 F.2d 424, 442 (10th Cir. 1985) (remanding to allow discovery so plaintiff could identify the particular FBI agents who he believed violated his rights),

---

[12] Mr. Whitehead names the following prison-official defendants with regard to this claim: Eason, Boyd, Smith, Frawner, Phillips, Cruz, and Marcantel.

[13] Mr. Whitehead acknowledges that he was able to exhaust the grievance procedure for his claims. He further acknowledges that he was not denied access to the court for failure to exhaust the grievance process. *Cf. Jones v. Bock*, 549 U.S. 199, 211 (2007) (stating prison grievance procedures must be exhausted before claims may be brought in court).

19

*vacated on other grounds sub nom. Tyus v. Martinez*, 475 U.S. 1138 (1986); *see also*

*Valentin v. Dinkins*, 121 F.3d 72, 75–76 (2d Cir. 1997) (recognizing district court's

obligation to allow pro se plaintiff limited discovery to identify defendant for service

of process). A magistrate judge addressed the motion, stating that if the complaint

survived initial screening under 28 U.S.C. §§ 1915(e)(2) and 1915A, "the Court will

issue and serve all process as provided in § 1915(d)." Dist. Ct. docket 73, at 2.[14]

Neither the magistrate judge nor the district court, however, evaluated whether

Mr. Whitehead's claims against Eason survived initial screening.

We affirm the dismissal, albeit for reasons other than those stated by the

district court. *See Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878–79 (10th Cir.

2017) (appellate court may affirm the district court's "ruling on any grounds

adequately supported by the record, even grounds not relied upon by the district

court" (internal quotation marks omitted)). The complaint included only one claim

against Eason, namely that she thwarted and frustrated inmates' attempts to resolve

prison grievances. Given that we reject this argument with respect to other

defendants in this order and judgment, a remand for the district court to evaluate the

claim under §§ 1915(e)(2) and 1915A would be futile. *See Comm. for First*

*Amendment v. Campbell*, 962 F.2d 1517, 1525 (10th Cir. 1992) ("Courts are not

---

[14] Neither party included this document in the record on appeal. We "exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).

20

required to remand in futility . . . .").  Accordingly, we affirm the district court's dismissal of Mr. Whitehead's claim against Eason.

## V.   DENIAL OF LEAVE TO AMEND THE COMPLAINT AND TO SUPPLEMENT THE PLEADINGS

Mr. Whitehead filed a motion for leave to amend the complaint and a later motion to supplement the pleadings.  The district court summarily denied both motions as moot based on the district court's dismissal of all federal claims.  Generally, we review both rulings for an abuse of discretion.  *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010) (leave to amend the complaint); *Walker v. United Parcel Serv., Inc.,* 240 F.3d 1268, 1278 (10th Cir. 2001) (leave to supplement the pleadings).  However, we review legal conclusions, such as mootness, de novo.  *Ghailani v. Sessions*, 859 F.3d 1295, 1300 (10th Cir. 2017) ("We review mootness de novo as a legal question."  (internal quotation marks omitted)).

Mr. Whitehead sought to amend his complaint to add unspecified exhibits, expand on his equal-protection claim, and expand on his First Amendment retaliatory transfer claim.  The motion to amend asserts that Mr. Whitehead had been "transferred for bringing this suit."  R. at 516.  Similarly, the motion to supplement the pleadings asserts that defendant Martinez retaliated against Mr. Whitehead for filing the underlying lawsuit and for filing grievances by transferring him to another prison facility.  Mr. Whitehead alleges the transfer violated his First, Fifth, and Fourteenth Amendment rights.

21

The retaliatory transfer claim Mr. Whitehead sought to add to his suit may be a proper claim for relief.[15] This claim was not dependent on the claims dismissed by the district court. Accordingly, Mr. Whitehead's motions to expand his retaliatory transfer claim did not become moot when the district court dismissed Mr. Whitehead's remaining claims.[16]

Further, the district court denied both motions without an "apparent or declared reason" such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Indeed, the district court's denial of these motions based on a faulty legal conclusion is akin to an "outright refusal to grant leave." *Id.* Such a refusal constitutes an abuse of discretion. *Id.* We thus conclude that the district court abused its discretion when it denied these motions. Accordingly, we reverse and remand the denial of Mr. Whitehead's motion to amend the complaint and his motion to supplement the

---

[15] For example, prison officials may violate a prisoner's First Amendment rights when they transfer the prisoner because the prisoner exercised those rights. *Frazier v. Dubois*, 922 F.2d 560, 561–62 (10th Cir. 1990) ("[W]hile a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer, prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution." (internal quotation marks omitted)).

[16] Mr. Whitehead's request to expand on his equal-protection claim did not provide any additional facts or explain how he intended to supplement this claim. Thus, we conclude that the district court did not err in denying Mr. Whitehead leave to expand on his equal-protection claim or to add unspecified exhibits.

22

pleadings to the district court for evaluation consistent with this order and judgment. On remand, the district court may consider whether other grounds exist for denying these motions.

## VI.    CONCLUSION

We vacate the district court's dismissal of the First Amendment claims relating to hardback books, internet access, mailed-in newspaper articles, and materials limited to approved vendors and reverse the district court's denial of the motions to amend the complaint and to supplement the pleadings.  We remand these claims for further proceedings consistent with this order and judgment.  We also remand the equal-protection and Commerce Clause § 1983 claims with directions to specify that the dismissal of those claims is without prejudice.  The district court's judgment is affirmed in all other respects.

Entered for the Court


Joel M. Carson, III
Circuit Judge

23